The next and final argument on our call today is Agenda No. 8, Case No. 110395 and 110422, the Board of Education of Auburn Community Unit School District No. 10 v. Illinois Department of Revenue. Counsel for the Appellant, Cross Appley, please proceed. Justices, opposing counsel, good morning. I'm Laura Leber-Kett, Counsel for the Board of Education of the Auburn Community Unit School District No. 10. If it pleases the Court. The initial question before the Court is whether the Appellate decision, which split the Auburn District into a Patel and non-Patel portion, should be allowed to stand. This is a question of statutory construction and it is a noble review. The Auburn District and the Department of Revenue are united on this position, and we both have argued to the Court that the Appellate decision may not be allowed to stand. The decision raises serious questions under the Uniformity Clause of the Illinois Constitution. In addition, it is without statutory support in Patel. There is nothing in Patel upon which the Court could base a decision to split the Auburn District into two sections, one under Patel, one not, and the Court cited no such provision. It, in effect, adds a statutory provision to Patel, which of course is a task that is left solely to the Legislature. It leaves the Department of Revenue, the County Clerks, and the Auburn District with no legislative guidance on matters such as the annual levy, the tax service extension base, the revenue raising measures should be dealt with in a now Patel and non-Patel district. There are competing provisions in the school code, and in Patel, and the single school district will have to figure out on its own how to deal with those competing provisions. Because the parties agree, and unless this Court has any questions on this particular issue, the Auburn District stands on its brief, and that portion of the brief is submitted by the Department on the issue. Does the Court have any questions? Move to the primary issue then before the Court, which is whether Patel should continue to apply to the Auburn District as a whole, subsequent to it becoming a taxing district with equalized assessed valuation, EAB, in more than one county, or a multi-county taxing district. This again is a question of statutory construction and de novo review. It's uncontested that in 1996, when Sangamon County voted to approve Patel, that the Auburn District had EAB in only one county, and that was Sangamon. It's also uncontested that as of January 31, 2007, when the Regional Board of Trustees annexed the Divernon District to the Auburn District, it became a taxing district with EAB in one or more counties. That is Sangamon and Montgomery, and Montgomery has never considered Patel. There is no provision in Patel that specifically addresses Patel's status in a single taxing district that becomes a multi-county taxing district. This lack of a specific provision was recognized by the Department in its August 28, 2008, letter to the Auburn District, in which letter the Department declined to issue any formal ruling on Auburn District's Patel status subsequent to the annexation. It was also recognized by the trial court and the appellate court. The trial court used the language that was in the statute and ruled in favor of the district, whereas the appellate court impermissibly created new provisions. This court has often observed that a court cannot, under the guise of statutory construction, supply omissions or remedy defects. It must instead rely on the language used by the legislature in the statute. It's section 18-213 of Patel that instructs how and when Patel will become applicable to a taxing district, and that's both single county and multi-county. It's section 18-213E3 that sets forth two conditions that must be met before Patel can be applied to a multi-county district. One of those conditions is that each county must have at least held a referendum under Patel. The second of those is that the county with the majority of the EAB has approved that referendum. In the 15 years that Patel has been available outside of Cook and the Collier counties, Montgomery County has never held a Patel referendum. So in this case, if Montgomery County held a Patel referendum and voted it down, then Auburn would be subject to Patel? Yes, it would. But right now, as it is now configured, the Auburn district does not meet those two conditions. The department has often repeated that the principal purpose of Patel is to give taxpayers greater control over property taxes. Given that purpose, we have to look at the language to discern how that control will be effectuated. It was the legislature that chose to condition the application of Patel in multi-county districts on, for one, the fact that each county in which EAB is located has held a Patel referendum. We believe that it is clear that the legislature intends that each county in which the taxing district has EAB has a say in whether Patel will apply or at least has considered Patel. We don't see that any other intent can be gleaned from the language in Section 213. That intent, however, is lost if the department's argument is accepted. The department argues that the corporate identity of the Auburn district is the same now as it was in 1996 when Sangamon County approved Patel and the Auburn district as then configured became subject to it. The department suggests that only under circumstances where that corporate identity has changed would Section 213 now be relevant. But the legislature did not choose the corporate identity as a condition of the applicability of Patel. The legislature chose instead the location of the EAB of the taxing district. That is sort of its geographical identity. And when the geographical identity is such that the EAB is in more than one county, each county has to have held a Patel referendum. Now the legislature could easily have chosen the corporate identity as the trigger point. But it didn't. The ballot question in Section 213 by which the voters approved Patel could easily have been directed to the voters of a particular tax-paying district with a specific corporate identity. But instead, it applies to all taxing districts in any given county and is put to all the voters of that county. After that point, the legislature imposes these two conditions that must be met before Patel applies, neither of which is that the corporate identity of the taxing district has to have changed or be a specific form. Instead, the legislature chose by the language in 213 to give voters in each county a voice in whether Patel applies. If the department's arguments are adapted, it would strip Montgomery County of its voice. It would nullify the legislative decision to use territory or location of EAB and the existence of a Patel referendum as a condition of Patel applicability. But doesn't the position of the board have the flip results to the voters of Sangamon County who voted for Patel? Patel would still be in existence in Sangamon County. It is only in the Auburn district, which now has EAB located in both counties, where Patel would no longer be in existence. And it wasn't the board that urges this position. It was the legislature that chose that those are the conditions. But doesn't this make an impossible task for the county clerks that are trying to figure out what the tax rates are and how much the citizens have to be responsible for? If the appellate decision were left to stand and the Auburn district were Patel and non-Patel, that would be an impossible situation. But the Auburn district has been treated as a non-Patel district since 2007 when the territory was annexed. It's been operating as a non-Patel district. And had the annexation occurred before the vote on Patel, Auburn district would never have become subject to Patel. So that situation has already been considered by the legislature, and it's been decided already that a taxing district with EAB in two counties, even if most of its EAB is located in a Patel county, can still be a non-Patel taxing district. It's the taxing district that's essential to look at here, not the county as a whole, because it can be separate from the county. And it is in many cases. For instance, Lincolnland Community College, its corporate identity has 15 counties. It's not subject to Patel even though most of its EAB is here in Sangamon County because, for one, Montgomery County has never held a referendum. So that situation does exist. It's our position that 213 makes it clear that Patel no longer applies. And because 213 can't apply to the Auburn district as it is now configured, we can't move to Section 214 of the revocation measures. At any rate, the language of 214 supports the Auburn district's position. It contains the same legislative reliance on the geographical identity, that is the location of the EAB. There is no reliance or even mention of the corporate identity. That section defines the taxing district for purposes of that section only as a taxing district that became subject to Patel under Section 213, which, of course, directs us back to the language of 213 and the conditions contained therein that each county has to have held a referendum. I think that you have to be clear from the language of Section 213 that Patel only applies in a multi-county district where both counties have at least considered it. And we can't get to 214 without the precursor 213. The department argues that it is only under 214 that Patel could no longer exist in the Auburn district and presents a scenario by which it could fall into place because the language of 214 does not fit the Auburn district. The language of 214 requires that one of the counties have revoked Patel or that they have considered Patel and rejected it. That hasn't happened here because Montgomery County has never considered it. The scenario presented by the department where 214 would work is at odds with the often repeated undisputed purpose of Patel, which is greater control to the taxpayer. The scenario is this. Sangamon County would vote to revoke Patel. Someday in the future, Montgomery County may consider Patel and reject it. At that time, Patel would no longer be in effect in the Auburn district. Under the department scenario, the Sangamon County vote to revoke Patel would have no effect on the Auburn district. And for how long, we don't know. It's indefinite. It could be forever. So the result is that a county that has not even considered Patel would, by its lack of consideration of Patel, be able to control whether the people who put Patel in could ever revoke it. And it's not by any action of Montgomery County. It is by inaction. And there is nothing in 214 that would suggest that a county's inaction should control whether or not Patel could be revoked. If we agree, and I think I do, that there's a lapse or there's something missing here in the legislation, clearly it's a very unusual situation. Because of that, should we be looking at whether it's the district as it was in existence at the time Patel became applicable, rather than what happened to the district after the annexation, or should we be looking at, as I think you're arguing, what the district is now, what the geographic area is, because it took on some non-Patel property? And I think there's a couple things that are important here. The Auburn district did not seek the Divernon district property. Divernon district was dissolved. It could not sustain an independent school district any longer. Which could lead to a policy question. Could a district like Auburn seek to take in one acre of land in a non-Patel county, thereby ridding itself of the constraints of Patel? I think that under the current scheme it could. And that is something that the legislature has to deal with. But that is something that the courts cannot deal with. And we can only look at the language that's in Patel. And the language is very clear. And the reason that I argue that Auburn district has to be looked at now, as it is now configured, is because you really have to look at it from the inception of this new configuration. As I said, it's the configuration of a taxing district that is important to the legislature in Patel. It's not its corporate identity. I want to preface this question with some assumptions to make sure that I'm right about this. Patel doesn't apply to Cook or Collar counties. Is that correct? Patel automatically applies in Cook and Collar counties. They're affected counties. So they're affected counties. There never has to be a vote there. And under sections E1, 2, and not 3, there is no need for a vote for that reason. Right. Right, Your Honor. Would you agree, counsel, that if this court focuses on how you lose Patel protection, that the department then prevails? No, Your Honor. I don't think that that's true. I don't think the department prevails because the legislature has not focused on how you lose Patel protection. It has focused on how Patel is applied. And it has focused on the location of the EAV in a multi-county district, at least, and the existence of a Patel referendum. And so if by that scheme the annexation of property in a county that has never considered Patel results in Patel not being applied, then that is, and that's not what the legislature wants. That's something the legislature has to deal with. But that's the language the legislature used. That's not the Auburn District's language. That's the legislature's language. So I think that the only way to look at this is what is the configuration of the taxing district, where is its EAV located, and have both those counties taken steps to at least consider Patel. And it's clear that that's what the legislature was attempting to do. Well, if we focus on losing of Patel protection, wouldn't that bring us to 214? It would in an instance where both counties have considered and rejected Patel. But we don't have that. So that's why it's our position that 214 does not come into play. The only other issue is whether or not there is any interpretation of Patel that should be given deference by this court, an agency interpretation. And we have certainly able argument by the Attorney General to this court, but we have no preexisting interpretation that is to be given due deference. All we have is a letter from the department that says, No, we don't want to interpret this. We're not going to give you a formal ruling on your status subsequent to the annexation. We're going to make some ambiguous reference to the only two possible provisions that could be applied, call it guidance, and then wait to see what happens. And that's all that was given by the department, the agency that is charged with the interpretation of Patel. It is our position that there is no interpretation that is due deference. There is no statute, ambiguous or otherwise, that the department has interpreted that is directly on point here. And in fact, the department said there is no specific provision. So there's nothing to which to give deference. It is the legislative prerogative to choose to give way to the location of EAV and to require the existence of a Patel referendum. And that's what the legislature did, and that's what must be given deference. That's what must be given effect. And as the appellate court could not draft new provisions, this court cannot give deference to the lack of an interpretation over the plain language of the statute. We would ask the court to reverse that position or portion of the appellate decision that held Patel is still in effect in Sangamon County and for a decision that Patel no longer applies to the Auburn district as a whole. So where you are in agreement is what it will look like from this court is the reversal of the appellate court and then either agreeing with the board's position or the department's position. Absolutely, and I think both the department and I would say the same thing on that issue. Any other further questions? Thank you. Thank you. Ms. Murphy. Good morning, Your Honors. May it please the court, Rachel Murphy, Assistant Attorney General, appearing on behalf of the Illinois Department of Revenue and Director Hamer. Your Honors, our position is very simple. The post-annexation Auburn district is the same taxing district that became subject to Patel through referendum. The only way it can escape Patel is through the revocation referendum process. It cannot circumvent the voters by annexation of territory. Our position is the only one that is grounded in the statutory text. We agree with the board that the appellate court's decision has no basis in the text. There is no basis for splitting the district. But the board's position also is not grounded in the statutory text. In contrast, the department's position arises from three sections of the property tax code. That's sections 1-150, 18-213, and 18-214. Section 1-150 defines a taxing district as a school district or other governmental entity with the power to levy taxes. So contrary to counsel's position, the legislature has defined the operative entity by its corporate identity, not by its geographic boundaries. Then you look to section 213, which says that Patel becomes applicable to a taxing district if at the time of the relevant referendum that taxing district meets the criteria of 213E. 213 does not provide for re-evaluating a taxing district that has become subject to Patel upon a later change in that district's boundaries. The board has never pointed to any language in that section that overcomes the words becomes applicable and says that you can later re-evaluate a taxing district because of a change in circumstances. There is no basis in the statutory text for the board's position. Although it is understandable as a policy matter, it simply is not what the statute says. And third, section 214 provides that the only way to remove Patel from a taxing district that became subject to Patel under section 213 is for the voters to revoke it through another referendum. Here, the Auburn district continues to be subject to Patel, the entire Auburn district, because the post-annexation district is the same school district as it was in 1997. It has the same corporate identity, which under section 1150 is the relevant characteristic that Patel looks to. The board has admitted that it has the same corporate identity, and the annexation process simply did not change the district in any way that is cognizable under Patel. The district still has the same school board. It still has the same governance. It is still the same entity with the power to levy taxes. And that district has not met the conditions for revocation under section 214. The fact that those conditions haven't been met doesn't mean that section 214 is impossible or that our interpretation is absurd. It simply means the conditions have not been met to lift Patel. And the fact that the revocation is not within the district's control is also not a reason to reject the department's interpretation. It is within the control of the currently relevant counties, which are Sangamon and Montgomery. And yes, it is true that Sangamon County alone could impose Patel on the district because at the time that the referendum was held, the district was a single county district. And now it's a multi-county district, and so both counties have to be involved. And this furthers the will of the voters and thus furthers the undisputed intent of Patel because it is always the affected voters who must have a say. Would the converse be true? In other words, if the major district were in a non-Patel county and the situation were reversed, would that be true? The whole district would be non-Patel? If from the start the Auburn district had been a multi-county district in 1996 and it had only had 0.3% of its EAV in Montgomery County, then the district would not be subject to Patel because Montgomery County has not held a referendum. So it is true that a single county can block application of Patel, even if it's only a tiny portion of the district that's located in that county. And this is because the legislature, as reflected in the history, was very concerned that they not be imposing Patel on counties, but that the county board be able to decide whether this question would go to the voters. But once Patel has become applicable, the text is very clear that it cannot be lifted simply by grabbing territory in another county. At that point, the voters in the annexed territory take the district as it comes to them. They take the same superintendent. They take the same school board. They take the same governance. They take the same entity that has the power to levy taxes, and that entity is subject to Patel. Going forward, however, because they are now part of that district, they have a say in whether Patel would be lifted. And it could be lifted if Sangamon holds a revocation referendum and Montgomery holds an initial referendum whereby Patel is rejected. The Auburn district also has other options for raising additional revenue. Patel does not completely foreclose increasing its extension. There are a number of avenues whereby it can increase the limiting rate. It can levy a new rate. It can issue a new bond. It can increase the extension limitation, and it can increase its debt service extension base. But all of these have something in common. They have to go to the voters, just as they do with having revocation of Patel. All of these have to be put to the voters. Understandably, the board would like to avoid that and would like to be able to issue bonds without having to go through the referendum process. But it must work within the limits of Patel because Patel has never been revoked. The department's interpretation is the only one that is justified and grounded in the statutory text. The board's position simply is one that it would like to see, but they cannot point to anything in the text that provides for reevaluation because of a change in boundaries. And given the definition of a taxing district as the entity that has the power to levy taxes, they cannot simply point to the legislature's concern about when a district has territory in other counties to propose that geographic boundaries are what's relevant here. They cannot overcome the plain definition of a taxing district. The department's interpretation, as I said before, is the one that furthers the will of the voters. Here we have Sangamon County, which is 99.7% of this district, and those voters have imposed Patel. And the Montgomery County voters would have an opportunity to rescind Patel because they are now part of this district. But to accept the board's position would mean that the regional board of school trustees could have territory annexed onto districts, could annex territory from other counties, to help that district get out from under Patel. And annexation under Article 7 of the school code does not require going to the voters. In contrast, when you combine a district or reorganize and create a new district, you have to go to the voters in a referendum. So it is within the control of the regional board to annex territory, simply on a petition from a school board. And that would create perverse incentives for the regional board to annex territory when a district is contiguous with a county that has not held a Patel referendum. And just as the board is attempting to do here, thereby allow the district to escape Patel. And Ms. Murphy, it was not the Auburn School District, it was the Divernon District that petitioned the school board? That's correct. And no voter participation to effect the annexation? That's correct. The dissolution and annexation was accomplished under 7-2A of the school code, which simply requires petition by the school board, and then the regional board can grant that dissolution petition. Now, it's subject to administrative review, but otherwise the regional board did not have to involve the voters in this decision. And if it's subject to administrative review, presumably then property owners, parents, students, and so forth could petition to challenge that? They can appear also before the regional board. Interested parties can appear before the regional board. I believe that they have to have appeared before the board in order to be a party in their administrative review action. And I may not be pronouncing the name correctly, but Divernon School District was 100 percent in Montgomery, or was there an overlap with Sangamon? There was a significant overlap, Your Honor. And actually the Divernon District was primarily in Sangamon. I believe it was close to 98 percent was in Sangamon. So it was just a small portion that was in Montgomery. And the Divernon District was not subject to Patel, because at the time that Sangamon County held the referendum, it was a multi-county district. So that's the contrast between the two. So it's looking at the district at the time the relevant referendum is held. Unless the court has further questions, we ask that you reverse the decision of the appellate court and declare that Patel continues to apply to the Auburn District in its entirety. Thank you. Thank you. There were a couple of comments that I think really lend support to the Auburn District's position here. One is that we are talking about the affected voters, and the affected voters here are not the Sangamon County voters. And I urge the court to keep that in mind. We are talking about the Auburn District only, not Sangamon County. Patel will continue in Sangamon County as it has. The affected voters here are the constituents of Auburn District, both in Montgomery County and in Sangamon County. And as counsel noted, there was no opposition to this dissolution. What happened when Divernon District was dissolved, and it was dissolved because it could not sustain itself. This is simply not a family who would rather be in a different district. This is an entire district that was dissolved. And Auburn District took on substantial burdens when that district was dissolved. It's part of the record that there are substantial life, health, and safety improvements that must be made. And the only reason we are here is because Auburn District sought bond counsel opinion to issue bonds. Of course, you have to have a bond counsel opinion in order to issue these bonds. It was bond counsel that raised the question. Department of Revenue had never raised the question. The Sangamon County clerk had been treating the Auburn District as a non-Patel district since January 31, 2007. And if it were not for bond counsel, we would not be here, and Auburn District would have gone merrily along its way as a non-Patel district. So the district is not attempting to impose somebody else's will on the taxpayers of Auburn District. This is the will of the Auburn District. There was no opposition to this dissolution. The problem with the department's argument is that it attempts to impose a statutory scheme on a district that it no longer fits. It's true that the definition in Section 150 does refer to the school district that can levy taxes. But the definition in the revocation portion that the department urges you to apply has a different definition. And it says a taxing district that has become subject to Patel under Section 213. And again, we are back to the conditions in Section 213. And one of those conditions is that both counties have to have held a referendum. We are in agreement that there is nothing to point to in the statute on this. That is the problem. The legislature hasn't dealt with this. But we are using the language that is there in Section 213. So our argument is based on the statutory text. The fact that it is a small portion of EAV that is located in Montgomery County should not even be considered. The legislature very clearly used the word any EAV. Not a lot of EAV or 2% of the EAV or 0.55% of the EAV. Any EAV. So whether there is a small portion or a large portion in a county that has not held a referendum, Patel does not go through. And that is our answer with regard to where the EAV is located. And unless the court has any further questions, we have split our rebuttal time. So I want to make sure we give the department its due. Thank you. Thank you. I just have two points, Your Honors. First, even in rebuttal, the board is unable to point to anything in Section 213 that provides for re-evaluation once a taxing district, meaning the corporate entity, has become subject to Patel. And second, as far as raising money for the improvements, the department's position is not that the board is completely foreclosed from increasing the amount of money it can raise. It just has to go to the voters. And that is what the legislature intended in passing Patel. Thank you. Case numbers 110395 and 110422, Agenda Number 8, Board of Education of Auburn Community School District versus the Department of Revenue is now taken under advisement. Mr. Marshall, our report stands in adjournment until Tuesday, March 22, 2011. The report stands adjourned until Tuesday, March 22, 2011.